**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RASHON HARRIS, *et al.*, *

Plaintiffs, *

v. * Civil No. 21-0298-BAH

LARRY HOGAN, GOVERNOR, *et al.*, *

Defendants. *

* * * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiffs Rashon Harris and Chauncey Bennett ("Plaintiffs"), along with several others who have since been dismissed from this case, filed this suit in February 2021 against then-Governor of Maryland Larry Hogan; Patricia Goins,[1] identified as the then-Commissioner of the Department of Corrections; Robert Green, then-Secretary of Maryland Department of Public Safety and Correctional Services; and Walter West, then-Warden of Eastern Correctional Institution ("ECI") (collectively "Defendants"). ECF 1. Plaintiffs, who were all incarcerated at ECI when the pro se complaint was filed, brought claims under 42 U.S.C. § 1983, alleging violations of their Fifth, Eighth, and Fourteenth Amendment rights based on the handling of the Covid-19 pandemic at ECI. ECF 1, at 6–8. Pending before the Court today is Defendants' motion to dismiss or, in the alternative, for summary judgment.[2] ECF 79. Plaintiffs filed a response in

---

[1] According to Defendants, this Defendant's full name is Patricia Goins-Johnson, and her job title is "Executive Director of Field Support Services at Maryland Department of Public Safety and Correctional Services." ECF 79, at 2.

[2] Defendants filed this motion in response to the Court's prior requesting briefing on the question of mootness in this case. ECF 72; ECF 79. Though filing a motion to dismiss in this form is unorthodox, the Court will accept and consider Defendants' motion because doing so does not

opposition, ECF 89, and Defendants filed a reply in support, ECF 90. All filings include memoranda of law and exhibits.[3] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendants' motion is **GRANTED**.

## I. BACKGROUND

The worldwide crisis caused by the Covid-19 pandemic was at its peak in 2020 and 2021. *See, e.g.*, *Clark v. Governor of New Jersey*, 53 F.4th 769, 777–78 (3d Cir. 2022) (noting the exceptional nature of the pandemic in 2020–2021). While the pandemic was devastating to communities throughout the country and the world, certain groups were affected even more profoundly than the general population, including those who were incarcerated at the time. *See, e.g.*, *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021) (noting that "COVID-19 raises medical issues in the prison context that are particularly serious" and acknowledging arguments "that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison"). Amidst this backdrop, Plaintiffs filed their complaint. ECF 1.

The original plaintiffs listed on the complaint were Rashon Harris, Darren Lee, Chauncey Bennett, Dashan Brooks, Jay Britton, Jr., Frederick Kingery, and James Johnson, all of whom were incarcerated at ECI in 2021 when the complaint was filed. ECF 1. Only Mr. Harris and Mr. Bennett remain as Plaintiffs today. *See* ECF 9 (terminating James Johnson, Dashan Brooks, and

---

"affect any party's substantial rights." Fed. R. Civ. P. 61. The parties fully briefed this motion, and so the Fourth Circuit's "preference for deciding cases on the merits" leads this Court to consider Defendants' filing as it would any other motion to dismiss. *Corporal v. Weber*, No. 21-7120, 2023 WL 4618291, at *1 (4th Cir. July 19, 2023) (citing *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010)), *cert. denied*, 144 S. Ct. 584 (2024).

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

Jay Britton, Jr., as plaintiffs); ECF 88 (approving voluntary dismissals of Frederick Kingery and Darren Lee as plaintiffs).

Plaintiffs' pro se[4] complaint alleged that Defendants, all of whom were either officials of the Maryland state government or leadership of ECI, were liable for violations of Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment and violations of Plaintiffs' Fifth and Fourteenth Amendment rights to equal protection. ECF 1, at 1, 4–9. Specifically, Plaintiffs alleged that ECI failed to adequately protect its residents from the Covid-19 virus. *Id.* at 4–8. According to Plaintiffs, as of December 2020, ECI "ha[d] the highest amount of confirmed Covid-19 infections" among Maryland correctional institutions and failed to abide by Covid-19 guidance issued by the Centers for Disease Control and Prevention (CDC). *Id.* at 1–3. Plaintiffs claim that the CDC recommended (1) the wearing of masks; (2) six feet of social distance between individuals; and (3) that "[i]deally inmates be single celled." *Id.* at 1–2. ECI allegedly adhered to none of these standards. *Id.*

According to Plaintiffs, ECI had in place several policies that exposed the incarcerated population to an increased risk of contracting Covid-19. ECI allegedly "quarantine[d] infected Covid-19 inmates with non[-]infected cellmates . . . contrary to the recommendation of the CDC to sep[a]rate and isolate"; would "send non[-]infected inmates to lockup with an infractionary ticket for refusing housing if the inmate refuse[d] to be celled with his Covid-19 infected cellmate"; often refused to test or isolate symptomatic individuals; "forced" healthy individuals to "share cells, sinks, and toilets with infected or symptomatic Covid-19 cellmates"; failed to address the overcrowding at ECI which contributed to an inability to social distance within the facility; failed

[4] Plaintiffs obtained counsel after the filing of the complaint. *See* ECFs 20, 22, 26, 46.

to enact transfer procedures to protect existing residents from incoming residents who may be carrying the virus; and failed to establish protocols to "thoroughly clean commonly used essentials" such as "[s]howers, phones, microwaves," and televisions. ECF 1, at 3–8. When Plaintiffs requested to be housed in single cells, they received no response. *Id.* at 3. Plaintiffs took particular issue with ECI's failure to "isolate or separate those 50 [and] over who[] have pre-existing documented health conditions from infected or symptomatic inmates." *Id.* at 7. Plaintiffs also highlighted that the incarcerated population in the state of Maryland is comprised of "70% to 80% [B]lack and brown people[], which is the highest percentage of minorities in prison in America,"[5] and that "[t]he CDC has reported [B]lack [and] brown people are [three] times more likely to suffer severe illness [and] death" from Covid-19.[6] *Id.*

The complaint requests injunctive and declaratory relief and asks that the Court order Defendants to (1) place all incarcerated individuals aged 50 and over with pre-existing medical conditions in single cell housing; (2) "eliminate all double celling practices and procedures"; (3)

[5] According to WYPR, a Baltimore Public Media organization, Maryland's rate of imprisonment of Black persons compared to the share of the Maryland community comprised of Black people shows "the highest disparity of any state in the union: about 30 percent of Maryland's residents are African-American. Yet African Americans are 71 percent of those behind bars." Sheilah Kast & Maureen Harvie, *Maryland officials band together to reduce racial disparities in incarceration*, WYPR (Nov. 2, 2023), https://www.wypr.org/show/on-the-record/2023-11-02/maryland-officials-band-together-to-reduce-racial-disparities-in-incarceration [https://perma.cc/Y8YA-8CTP].

[6] The Mayo Clinic lends support to this claim. Daniel C. DeSimone, M.D., *COVID-19 infections by race: What's behind the health disparities?*, Mayo Clinic (Oct. 6, 2022), https://www.mayoclinic.org/diseases-conditions/coronavirus/expert-answers/coronavirus-infection-by-race/faq-20488802 [https://perma.cc/PL5C-PSRQ] (noting that "Non-Hispanic American Indians or Alaska Natives are 2.7 times more likely to need to stay in the hospital due to COVID-19 than non-Hispanic white people" and "[n]on-Hispanic Black or African American people and Hispanic people are about twice as likely to need to stay in the hospital due to COVID-19 than non-Hispanic white people").

provide Covid-19 tests for any incarcerated individual upon request; and (4) reduce the Maryland prison population by half. ECF 1, at 8–9.

The Court has ordered briefing on several issues in this case. Shortly after the complaint was filed, the Court ordered Defendants to show cause why injunctive relief ordering the cessation of the practice of double celling should not be granted. ECF 9. After Defendants responded to the order, ECF 15, and Plaintiffs responded to the response, ECF 17, the Court did not issue immediate injunctive relief. Plaintiffs next filed a motion for expedited discovery, ECF 37, which was denied, ECF 48. The Court next ordered Plaintiffs to show cause why the complaint should not be dismissed for failure to exhaust administrative remedies, ECF 48, and the parties fully briefed the issue of exhaustion,[7] *see* ECFs 53, 59, 60.

This case next sat dormant for some time, with no substantive filings for more than a year. In December 2023, after the case was transferred to me, the parties were asked to address how changes in circumstances since the filing of the lawsuit impacted the status of the case. ECF 72. In particular, the Court ordered the parties to address the impact of the custodial status of the then-remaining plaintiffs[8] and changes in the Covid-19 pandemic. *Id.* Defendants filed the instant

[7] The Court did not dismiss the complaint for failure to exhaust administrative remedies, but nor did it issue any order in response to the parties' briefings. Both parties made compelling arguments on the question of exhaustion, but ultimately, for reasons explored in detail below, other issues in this case are determinative.

[8] Of the plaintiffs that remained in the case at that time, only Mr. Bennett remained at ECI. As noted by the Court, at the time of the order:

> A search on the Maryland Department of Correction's "Incarcerated Individual Locator" shows that Mr. Bennett's holding facility is listed as ECI, Mr. Kingery's holding facility is listed as Roxbury Correctional Institution, and Mr. Lee's holding facility is listed as Patuxent Institution; there are no results for Mr. Harris. Maryland DOC, Incarcerated Individual Locator, https://www.dpscs.state.md.us/inmate/ (last visited Dec. 6, 2023). The victim notification service VINE reports that Mr. Harris was paroled in 2022. VINE,

motion to dismiss or, in the alternative, for summary judgment as their response to the Court's order. ECF 79.

Defendants now argue that the complaint should be dismissed as moot. ECF 79, at 11–12 (arguing that the claims brought by all Plaintiffs other than Mr. Bennett are moot); ECF 90, at 3–5 (arguing that Mr. Bennett's claims are moot). They claim that Mr. Harris' claims are moot because he is no longer incarcerated at ECI, ECF 79, at 11–12, and that Mr. Bennett's claims are moot because the CDC guidance upon which he relies in the complaint and his subsequent filings has since been rescinded, ECF 90, at 3–5. Mr. Bennett counters that his claims are not moot because he still has a redressable injury. ECF 89, at 11–13. Mr. Harris makes no separate arguments regarding the status of his claims, but Plaintiffs' response notes that Mr. Harris would like an extension of time to seek leave to amend his complaint. *Id.* at 10–11.

## II. LEGAL STANDARD

Though Mr. Bennett is currently represented by counsel,[9] the initial complaint was filed by the original plaintiffs pro se, and as such, the Court must liberally construe the complaint, holding it to a less stringent standard than if it were drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for him, nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v.*

---

> Rashon Harris Supervision Record, https://vinelink.vineapps.com/person-detail/offender/24706033 (last visited Dec. 6, 2023).

ECF 72, at 1 n.2.

[9] Mr. Harris had been represented by the same counsel in this action, but counsel requested in Plaintiffs' response to withdraw from representation of Mr. Harris. ECF 89, at 11. Mr. Harris hopes to obtain new counsel. *Id.*

*Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010). Beyond the liberal construction with which the Court considers the pro se complaint, there are several legal standards at play in the following analysis.

**A. Standing and mootness**

Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597 (2007). It is the plaintiff's burden to establish standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To do so, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Declaratory and injunctive relief are appropriate to redress ongoing or future harm. *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.,* 927 F.3d 396, 407–08 (6th Cir. 2019) (explaining that damages are an appropriate remedy for completed, past harm, but injunctive and declaratory relief are appropriate when there is an "allegation of a real or immediate threat" of future or ongoing injury); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (explaining that injunctive relief is only available when there is a "real or immediate threat the plaintiff will be wronged" in the future).

Here, Defendants allege that Plaintiffs no longer have an injury redressable through the relief they seek, and the case is therefore moot. ECF 79, at 11–12; ECF 90, at 3–5. "The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction, which extends only to actual cases or controversies." *Fleet Feet, Inc., v. Nike, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021) (quoting *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017)). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The parties must continue to have a 'personal stake in the outcome' of the lawsuit."

*Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)). This means that, throughout the litigation, a plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lewis*, 494 U.S. at 477).

**B. Motion to dismiss under Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff [or petitioner]." *Washington v. Hous. Auth. of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief"). "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176,

180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). And though the Court takes all well-pled facts in the complaint to be true, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted).

### C. Motion to dismiss or, in the alternative, for summary judgment

Finally, when presented with a motion to dismiss or, in the alternative, for summary judgement, the disposition of the motion "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020). In this case, Defendants' motion is styled as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. ECF 79. The Court exercises its discretion to consider Respondent's motion as a motion to dismiss under Rule 12(b)(6). *Pevia*, 443 F. Supp. 3d at 625. In addition to considering the complaint, the Court takes judicial notice of the publicly available, updated CDC guidance attached to Defendants' reply, ECFs 90-1 and 90-3, as well as the updated realities of the Covid-19 pandemic.

## III. ANALYSIS

Defendants contend that Plaintiffs' claims are moot, or, alternatively, that Plaintiffs fail to state a claim upon which relief can be granted. ECF 79, at 11–18; ECF 90, at 3–14. As standing is jurisdictional, the Court will begin by assessing the mootness argument before turning to the substance of Plaintiffs' claims. For the reasons below, Plaintiff Harris' claims are moot, and Plaintiff Bennett fails to state a claim upon which relief can be granted.

**A. Plaintiff Harris' claims are dismissed for lack of standing due to mootness, but Plaintiff Bennett's claims are still ripe for adjudication.**

"If intervening factual . . . events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693–94 (4th Cir. 1983). A case no longer presents an actionable controversy and thus becomes moot when it is "impossible for [the] court to grant any effectual relief whatever to a prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012)).

In this case, Plaintiffs requested injunctive relief, namely that the Court order Defendants to implement specific policies at ECI, including the cessation of double celling and access to Covid tests on demand. ECF 1, at 8–9. While Plaintiff Bennett remains incarcerated at ECI, Plaintiff Harris has been released since the filing of this action. *See* ECF 89, at 10 (stating that Mr. Bennett remains incarcerated at ECI and acknowledging that Mr. Harris has been released).

1. *Plaintiff Harris' claims are moot.*

"As a general rule, a prisoner's transfer or release from a particular prison moots his claim for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Dixon v. Thompson*, Civ. No. 23- 119, 2023 WL 3372379, at *1 (M.D. Pa. Apr. 24, 2023) ("[O]nce a prisoner is released from custody, a habeas challenge to some aspect of his confinement will become moot absent a redressable, continuing, and concrete injury which persists after his release.").

Because Mr. Harris is no longer incarcerated at ECI, his request for relief with respect to his conditions of confinement at ECI is moot. Injunctive and declaratory relief are appropriate to address ongoing and future harm, and Mr. Harris' release from ECI rendered moot any such

request as he is no longer subject to the conditions of confinement at ECI. *See Rendelman*, 569 F.3d at 186. Because Mr. Harris is no longer subject to those conditions, even were the Court to grant the injunctive relief requested, it could not benefit Mr. Harris. Therefore, it is "impossible for [the] court to grant any effectual relief whatever to [him as a] prevailing party." *Chafin*, 568 U.S. at 172. Mr. Harris' claims are moot.

Mr. Harris' claims cannot be saved by his request for leave to amend the complaint in the future. Plaintiffs' opposition to Defendants' motion states that Mr. Harris "requests an additional thirty days[10] to respond to the Court's Order, either by amending his complaint pro se or by having counsel file an appearance." ECF 89, at 11. The Court construes this as a request for leave to amend. Under Federal Rule of Civil Procedure 15(a), courts are to "freely give leave [to amend] when justice so requires." While it is within the discretion of a district court to deny leave to amend, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons that justify denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.*

The Local Rules in this district require that a party file a copy of the proposed amended pleading with their motion for leave to amend. Loc. R. 103.6 (D. Md. 2023). Simply requesting leave to amend in a response in opposition to a motion to dismiss does not constitute a proper motion for leave to amend. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir.

[10] More than 30 days have passed since Plaintiffs filed this response. *See* ECF 89 (filed March 4, 2024).

2008) (finding that a motion for leave to amend was "never properly made" where the plaintiffs "requested leave to amend only in a footnote of their response to defendants' motion for leave to amend, and again in the final sentence of their objections to the recommendation of the magistrate judge" and did not provide a proposed amended complaint to the district court); *see also U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) ("While Federal Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." (citation omitted)). This holds true even under the relaxed pleading standards applied to pro se plaintiffs. *Osei v. Univ. of Md. Univ. Coll.*, Civ. No. DKC 15-2502, 2018 WL 2117927, at *3 (D. Md. May 8, 2018) ("[W]here . . . the [pro se] plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make, 'the district court [does] not abuse its discretion' in denying a motion to amend the complaint." (omission in original) (quoting *Estrella v. Wells Fargo Bank, N.A.*, 497 F. App'x. 361, 362 (4th Cir. 2012))).

The Court recognizes that this case has been pending for years, and that Mr. Harris is undoubtedly frustrated as he has long been awaiting his "day in court" on this matter. Even so, leave to amend cannot be granted. Mr. Harris has had ample time to seek leave to amend either while pro se or while represented by counsel. The thirty requested days have come and gone with no entry of appearance by counsel nor any other filings. The foundation of this case is the conditions of confinement at ECI during the height of the Covid-19 pandemic, but Mr. Harris is no longer confined at ECI, and the height of the pandemic has passed. As such, Mr. Harris' request

for an extension of time to file leave to amend his complaint does not revive his claims, and they remain moot.

2. *Plaintiff Bennett's claims are not moot.*

Plaintiff Bennett's claims, however, are another story. Mr. Bennett remains incarcerated at ECI to this day. *See* ECF 89, at 10. While the Covid-19 pandemic is no longer at its height, the policy changes requested by Mr. Bennett would still undoubtedly help to protect Mr. Bennett from any respiratory viruses, including Covid-19. *See* ECF 89, at 11–13 (arguing that Mr. Bennett's health is still threatened by the conditions at ECI); ECF 79, at 12 (acknowledging that double celling and restricted Covid-19 test policies are still in place at ECI, and, therefore, Mr. Bennett's requested relief could still be granted). Thus, Mr. Bennett still has an ongoing injury in that he claims he is at greater risk of illness due to ECI's practices than is reasonable, and his injury is redressable because the Court could order ECI to cease those practices. *See Coreas v. Bounds*, Civ. No. TDC-20-0780, 2020 WL 5593338, at *8 (D. Md. Sept. 18, 2020) (reasoning that even though the plaintiff had not pled that he was at an increased risk of contracting Covid-19, his claim was not moot because he had "still properly alleged an injury-in-fact based on his continued incarceration under allegedly unconstitutional conditions"). As such, his claims are not moot.

**B. Plaintiffs fail to state a claim for an Eighth Amendment violation.**

The Court next turns to the substance of Plaintiffs' claims, beginning with the Eighth Amendment count. "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Eighth Amendment prohibits the infliction of "cruel and unusual punishment." U.S. Const., amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned," *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996), and requires that prison staff "take reasonable measures to guarantee the safety" of those incarcerated at the prison, *Whitley v.*

*Albers*, 475 U.S. 312, 320 (1986) (citation omitted). There are two components of a successful Eighth Amendment claim based on the conditions of confinement in incarceration: that "the deprivation of a basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166. (4th Cir. 1995) (emphasis in original) (cleaned up) (citation omitted).

To successfully plead a violation of the objective standard, an incarcerated plaintiff must "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions," *Shakka*, 71 F.3d at 166 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)). "[A] condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates this objective standard, even if "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33–34 (1993). This objective requirement is determinative in this case.

The Court acknowledges that Mr. Bennett surely experienced hardship living through the Covid-19 pandemic in prison, but while it cannot be denied that the pandemic ravaged prisons across the country—including ECI—during the height of the pandemic, the situation is thankfully very different today. *See Beahn v. Gayles*, 550 F. Supp. 3d 259, 272 (D. Md. 2021) (noting that, with the introduction of the Covid-19 vaccines and other changes in treatment of the virus, the "dire conditions" that led to many Covid-focused policies are "not currently expected to return"). The threat of Covid-19 may never truly leave us, but "it is absolutely clear that the same pandemic conditions we faced in 2020–21 are no longer extant." *Newkirk v. Superintendent Huntingdon SCI*, No. 21-1739, 2023 WL 4861767, at *1 (3d Cir. July 31, 2023) (cleaned up) (citation omitted).

And given this change, the "serious or significant" injury upon which Plaintiff Bennett bases his claim—"that COVID-19 poses a mortal health threat—is gone." *Id.*

As Defendants point out, the CDC has revoked its Covid-specific guidance, choosing instead to treat Covid-19 as any other respiratory virus. *See* ECF 90-1 (CDC press release noting that current respiratory illness guidance now covers Covid-19, rather than issuing separate Covid-19 guidance). That Mr. Bennett may be exposed to respiratory viruses that no longer pose an extreme threat of fatality does not rise to the level of serious threat required to plead an Eighth Amendment violation. *See Hall v. Holsmith*, 340 F. App'x 944, 947 (4th Cir. 2009) (per curiam) (finding that suffering from "flu-like symptoms" without more was not enough to amount to a "serious medical need"); *see also Williams v. Bishop*, Civ. No. RWT-12-1616, 2014 WL 4662427, at *10 (D. Md. Sept. 17, 2014) (same). Because of the change in circumstance surrounding the Covid-19 pandemic, the mere potential of exposure to the virus does not suffice to satisfy the first requirement of an Eighth Amendment conditions of confinement claim. As such, this claim must be dismissed.

**C. Plaintiffs fail to state an equal protection claim.**

The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."[11] U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, [a plaintiff] 'must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the

[11] Plaintiffs also bring an equal protection claim under the Fifth Amendment. *See* ECF 1, at 1. But the equal protection right in the Fifth Amendment applies only to federal government actors. *Strickland v. United States*, 32 F.4th 311, 356 (4th Cir. 2022) ("'In numerous decisions,' the Supreme 'Court has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws.'" (quoting *Davis v. Passman*, 442 U.S. 228, 234 (1979))). Because Plaintiffs bring claims only against state actors based on state actions, any separate equal protection claim brought under the Fifth Amendment must be dismissed for failure to state claim.

unequal treatment was the result of intentional or purposeful discrimination.'" *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). After a plaintiff makes such a showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654.

Here, construing Plaintiffs' complaint liberally, the similarly situated group that Plaintiffs allege receives preferable treatment compared to Plaintiffs appears to be all people who are not incarcerated. *See* ECF 1, at 1–9 (failing to explicitly identify a comparator group, but impliedly comparing conditions at ECI to the ability Plaintiffs would have to social distance and avoid Covid-19 infection outside of prison). "Prisoners are not a suspect class. The status of incarceration is neither an immutable characteristic nor an invidious basis of classification." *Moss v. Clark*, 886 F.2d 686, 690 (4th Cir. 1989) (citations omitted). Nor is there a fundamental right to have access to maximal infection prevention practices. *See e.g.*, *McGee v. Pontow*, No. 23-1487, 2023 WL 7381450, at *2 (7th Cir. Nov. 8, 2023) (finding no equal protection violation and making no mention of fundamental rights when some prisoners working as janitors exposed to Covid-19 were given higher quality face masks than others, who were exposed to Covid-19 less frequently).

Generally speaking, "when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002) (quoting *Heller v. Doe*, 509 U.S. 312, 319–20 (1993)). In a prison context, the state actors are afforded even more deference. *Id.*

The policies challenged by Plaintiffs, ECI's housing of incarcerated individuals two to a cell and not administering Covid-19 tests whenever an individual requests one, are obviously rationally related to a legitimate penological interest. *See Bell v. Wolfish*, 441 U.S. 520, 540 (1979) ("The Government [] has legitimate interests that stem from its need to manage the facility in which the individual is detained."). Defendants are tasked with the responsibility to ensure the safety of many thousands of incarcerated individuals with finite resources and supplies. That they have chosen to meet this challenge by housing incarcerated people with roommates and rationing Covid-19 tests to be used only by medical request is rational. *See Hite v. Leeke*, 564 F.2d 670, 674–75 (4th Cir. 1977) (holding that in the absence of arbitrary and capricious actions by prison staff, "the number of inmates[] who may be safely assigned to a cell is a matter resting within the sound discretion of the prison administration").

Plaintiffs' complaint also alludes to the racial disparities between the incarcerated population in Maryland and the general population. ECF 1, at 7. The data on this point is undoubtedly troubling, but the fact that Black and brown individuals are overrepresented in the prison population in Maryland, on its own, is not enough to save Plaintiffs' equal protection claim. *See Boyer v. Iser*, Civ. No. PWG-20-1260, 2021 WL 3852292, at *12–13 (D. Md. Aug. 27, 2021) (allegations of racially disparate treatment without specific facts or instances evidencing such disparate treatment fail to state an equal protection claim). As such, Plaintiffs' equal protection claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or, in the alternative, for summary judgment, ECF 79, is **GRANTED**. Plaintiffs' complaint is dismissed with prejudice.

A separate implementing Order will issue.

Dated: April 11, 2024

/s/
Brendan A. Hurson
United States District Judge